WO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Juan Jesus Lebario,

        Petitioner,

v.

Charles Ryan, et al.,

        Respondents.

No. CV-14-02434-TUC-EJM

**ORDER**

      Petitioner Juan Jesus Lebario filed an amended pro se petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his convictions for attempted first degree murder, aggravated assault with a deadly weapon, drive-by shooting, theft of a means of transportation, feeling from law enforcement, and criminal damage. (Doc. 11). Petitioner raises six grounds for relief: (1) due process and 14th amendment violations at trial where two witnesses made in-court identifications of Petitioner that were allegedly based on an unduly suggestive lineup; (2) 5th, 6th, and 14th amendment violations where the trial court precluded evidence that an officer took a photo of Petitioner that may have been sent to another officer before he identified Petitioner at the lineup; (3) 5th and 14th amendment violations where the trial court improperly considered Petitioner's use of a weapon as an aggravating factor at sentencing; (4) ineffective assistance of counsel ("IAC") based on trial counsel's failure to file a motion for a new trial when exculpatory DNA evidence was found after trial; (5) violation of Petitioner's 5th amendment due process right to a fair trial because the DNA evidence

constitutes newly discovered evidence regardless of the IAC issue; and (6) violation of Petitioner's 5th and 14th amendment due process rights where the trial court failed to hold an evidentiary hearing during the Rule 32 proceedings. Respondents filed an Answer contending that Petitioner failed to properly exhaust some of his claims and that they are procedurally barred without excuse, and that Petitioner's remaining claims that are properly exhausted are either without merit or not cognizable in federal habeas proceedings. (Doc. 17).

The Court finds that Petitioner properly exhausted his claims in Grounds One and Two of the petition, but failed to show that the state court's decision was contrary to clearly established federal law, an unreasonable application of that law, or based on an unreasonable determination of the facts. The Court also finds that Petitioner properly exhausted his claims in Ground Four, but failed to show that the state court's decision was based on an objectively unreasonable application of *Strickland v. Washington*. As to Grounds Three, Five, and Six, the Court finds that these claims are unexhausted and procedurally defaulted and thus not properly before this Court for review. The Court further finds that Petitioner does not demonstrate cause and prejudice or a fundamental miscarriage of justice to excuse the procedural default of his claims. Accordingly, the petition will be denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Trial, Sentencing, and Appeal

On October 1, 2010, a Pima County Superior Court jury found Petitioner guilty of attempted first degree murder, aggravated assault with a deadly weapon, drive-by shooting, theft of means of transportation, fleeing from law enforcement vehicle, and criminal damage. (Doc. 17 Ex. B). Petitioner was sentenced to a combination of concurrent and consecutive terms totaling 50 years in prison. (Doc. 17 Ex. D).

The Arizona COA summarized the facts of the case as follows:

> Lebario stole a truck from M.B. at gunpoint. A witness, M.M., followed him, but Lebario soon stopped, got out of the truck, and pointed his gun at her, at which point she drove away. The following day, an Arizona Department of Public

Safety ("DPS") officer, K.L., saw the truck on the highway, verified it was stolen, and pursued it. K.L. attempted to stop the truck, but the driver, whom he later identified as Lebario, refused to stop. K.L. then pulled his patrol car up next to the truck and Lebario fired shots at him. Law enforcement officers continued to pursue the vehicle, and ultimately stopped and arrested Lebario.

(Doc. 17 Ex. G at 2).

Following his conviction, Petitioner sought review in the Arizona COA. Appointed counsel filed a brief presenting three issues for review: (1) the trial court should have suppressed the two witnesses' in-court identifications because they were tainted by an unduly suggestive lineup procedure; (2) the trial court erred by precluding exculpatory evidence that a DPS officer took a cell phone photo of Petitioner which he may have sent to other officers before Lankow identified Petitioner as the person who shot at his patrol car; and (3) the trial court's use of the weapon involved in the attempted murder charge to aggravate Petitioner's sentence was improper under *State v. Harvey* and A.R.S. § 13-701(D)(2). (Doc. 17 Ex. F). On November 8, 2011, the COA found no reversible error and affirmed Petitioner's conviction and sentence. (Doc. 17 Ex. G).

Petitioner filed a Petition for Review with the Arizona Supreme Court and presented three issues: (1) whether the witnesses' in-court identifications should have been suppressed because they were tainted by an unduly suggestive lineup; (2) whether Petitioner should have been allowed to present exculpatory evidence that an officer took a photo that might have been sent to Lankow; and (3) whether the COA should have remanded the case for resentencing rather than finding harmless error. (Doc. 17 Ex. H). The Arizona Supreme Court denied the Petition for Review. (Doc. 17 Ex. I).

**B. Petition for Post-Conviction Relief**

On November 2, 2010, Petitioner initiated proceedings in Pima County Superior Court for post-conviction relief ("PCR"). (Doc. 17 Ex. K). The trial court appointed counsel to represent Petitioner, and counsel filed the Rule 32 petition on October 23, 2012. (Doc. 17 Exs. L, M, & O). Petitioner raised three issues: (1) IAC based on trial counsel's failure to file a motion for new trial after exculpatory DNA evidence was

found; (2) the DNA evidence constitutes newly discovered evidence regardless of the IAC issue; and (3) Petitioner is entitled to an evidentiary hearing because he has stated a colorable claim for relief for both IAC and newly discovered evidence. (Doc. 17 Ex. O). The trial court denied PCR on March 28, 2013. (Doc. 17 Ex. Q).

Petitioner filed a petition for review with the Arizona COA and alleged abuse of discretion by the trial court for: (1) denying PCR based on the newly discovered DNA evidence; (2) denying PCR based on IAC; and (3) dismissing the Rule 32 Petition without holding an evidentiary hearing. (Doc. 17 Ex. R). On November 13, 2013 the COA issued its decision granting review and denying relief. (Doc. 17 Ex. S). Petitioner did not file a petition for review with the Arizona Supreme Court.

### C. Habeas Petition

Petitioner filed his first Petition for Writ of Habeas Corpus (PWHC) in this Court on October 23, 2014, asserting three grounds for relief. (Doc. 1). The Court dismissed the Petition with leave to amend to identify the constitutional right allegedly violated in each ground. (Doc. 6). Petitioner subsequently filed his amended PWHC on April 20, 2015 and alleges six grounds for relief. (*See* pgs 1–2 above). Petitioner requests an evidentiary hearing and states that the ultimate issue is whether he received a just sentence.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") limits the federal court's power to grant a petition for a writ of habeas corpus on behalf of a state prisoner. First, the federal court may only consider petitions alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Sections 2254(b) and (c) provide that the federal courts may not grant habeas corpus relief, with some exceptions, unless the petitioner exhausted state remedies. Additionally, if the petition includes a claim that was adjudicated on the merits in state court proceedings, federal court review is limited by section 2254(d).

### A. Exhaustion

A state prisoner must exhaust his state remedies before petitioning for a writ of

habeas corpus in federal court. 28 U.S.C. § 2254(b)(1) & (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by fairly presenting them to the state's highest court in a procedurally appropriate manner. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("[t]o provide the State with the necessary opportunity, the prisoner must fairly present her claim in each appropriate state court . . . thereby alerting the court to the federal nature of the claim."). In Arizona, unless a prisoner has been sentenced to death, the highest court requirement is satisfied if the petitioner has presented his federal claim to the Arizona COA, either through the direct appeal process or post-conviction proceedings. *Crowell v. Knowles*, 483 F.Supp.2d 925, 931–33 (D. Ariz. 2007).

A claim is fairly presented if the petitioner describes both the operative facts and the federal legal theory upon which the claim is based. *Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2003), *overruled on other grounds by Robbins v. Carey*, 481 F.3d 1143 (9th Cir. 2007). The petitioner must have "characterized the claims he raised in state proceedings *specifically* as federal claims." *Lyons v. Crawford*, 232 F.3d 666, 670 (9th Cir. 2000) (emphasis in original), *opinion amended and superseded*, 247 F.3d 904 (9th Cir. 2001). "If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court." *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 1996). "Moreover, general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion." *Hivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999).

However, "[a] habeas petitioner who [fails to properly exhaust] his federal claims in state court meets the technical requirements for exhaustion" if there are no state remedies still available to the petitioner. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). "This is often referred to as 'technical' exhaustion because although the claim was not actually exhausted in state court, the petitioner no longer has an available state remedy." *Thomas v. Schriro*, 2009 WL 775417, *4 (D. Ariz. March 23, 2009). "If no

state remedies are currently available, a claim is technically exhausted," but, as discussed below, the claim is procedurally defaulted and is only subject to federal habeas review in a narrow set of circumstances. *Garcia v. Ryan*, 2013 WL 4714370, *8 (D. Ariz. Aug. 29, 2013).

**B. Procedural Default**

If a petitioner fails to fairly present his claim to the state courts in a procedurally appropriate manner, the claim is procedurally defaulted and generally barred from federal habeas review. *Ylst v. Nunnemaker*, 501 U.S. 797, 802–05 (1991). There are two categories of procedural default. First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds. *Coleman*, 501 U.S. at 729–30. Second, the claim may be procedurally defaulted if the petitioner failed to present the claim in a necessary state court and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id.* at 735 n. 1; *O'Sullivan*, 526 U.S. at 848 (when time for filing state court petition has expired, petitioner's failure to timely present claims to state court results in a procedural default of those claims); *Smith v. Baldwin*, 510 F.3d 1127, 1138 (9th Cir. 2007) (failure to exhaust claims in state court resulted in procedural default of claims for federal habeas purposes when state's rules for filing petition for post-conviction relief barred petitioner from returning to state court to exhaust his claims).

When a petitioner has procedurally defaulted his claims, federal habeas review occurs only in limited circumstances. "A state prisoner may overcome the prohibition on reviewing procedurally defaulted claims if he can show cause to excuse his failure to comply with the state procedural rule and actual prejudice resulting from the alleged constitutional violation." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (internal quotations and citation omitted); *Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012) ("A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law."). Cause requires a showing "that some

objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule . . . [such as] a showing that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that some interference by officials made compliance impracticable." *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (internal quotations and citations omitted). Prejudice requires "showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). The Court need not examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n. 10 (9th Cir. 1991). Additionally, a habeas petitioner "may also qualify for relief from his procedural default if he can show that the procedural default would result in a 'fundamental miscarriage of justice.'" *Cook v. Schriro*, 538 F.3d 1000, 1028 (9th Cir. 2008) (quoting *Schlup v. Delo*, 513 U.S. 298, 321 (1995)). This exception to the procedural default rule is limited to habeas petitioners who can establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup*, 513 U.S. at 327; *see also Murray*, 477 U.S. at 496; *Cook*, 538 F.3d at 1028.

## C. Adjudication on the Merits and § 2254(d)

The Ninth Circuit has held that "a state has 'adjudicated' a petitioner's constitutional claim 'on the merits' for purposes of § 2254(d) when it has decided the petitioner's right to post-conviction relief on the basis of the substance of the constitutional claim advanced, rather than denying the claim on the basis of a procedural or other rule precluding state court review of the merits." *Lambert v. Blodgett*, 393 F.3d 943, 969 (9th Cir. 2004).

If a habeas petition includes a claim that was properly exhausted, has not been procedurally defaulted, and was "adjudicated on the merits in State court proceedings," federal court review is limited by § 2254(d). Under § 2254(d)(1), a federal court cannot

grant habeas relief unless the petitioner shows: (1) that the state court's decision was contrary to federal law as clearly established in the holdings of the United States Supreme Court at the time of the state court decision, *Greene v. Fisher*, 565 U.S. 34, 38 (2011); (2) that it "involved an unreasonable application of" such law, § 2254(d)(1); or (3) that it "was based on an unreasonable determination of the facts" in light of the record before the state court, 28 U.S.C. § 2254(d)(2); *Harrington v. Richter*, 562 U.S. 86 (2011). This standard is "difficult to meet." *Richter*, 562 U.S. at 102. It is also a "highly deferential standard for evaluating state court rulings . . . which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal quotations and citation omitted).

## III.   ANALYSIS

### A.  Ground One

In Ground One, Petitioner contends that his 14th amendment due process rights were violated when two witnesses were allowed to make in-court identifications of Petitioner after viewing an unduly suggestive lineup. Petitioner specifically alleges that prior to viewing the lineup, the witnesses watched news programs about the crimes and were told that Petitioner had been arrested. Petitioner also alleges that the lineup procedure was flawed because Petitioner was the only person wearing prison orange, Petitioner's photo was placed in the middle of the top row, the detective prepared the lineup himself, the lineup was not tested on mock witnesses, and the lineup was not recorded.

Respondents concede that Petitioner has fully exhausted his claims in Ground One but contend that the claim has no merit. Respondents first note that the detective did not tell either witness that a suspect had been arrested until after they made their identifications, and further that neither witness saw any news reports about the crimes or Petitioner until after the lineup. Respondents next note that the COA found that Petitioner's orange t-shirt did not look like a prison uniform, and that both witnesses testified that they made their identifications based on Petitioner's face, not his clothing.

Finally, Respondents note that the state courts applied an express procedural bar and declined to address the merits of Petitioner's arguments that the detective failed to follow the proper procedures and that he erred by placing Petitioner's photo in the center row.

i. Law

"When a witness identifies the defendant in a police-organized photo lineup . . . the identification should be suppressed only where 'the photographic identification procedure was so [unnecessarily] suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *Perry v. New Hampshire*, 565 U.S. 228, 238 (2012) (quoting *Simmons v. United States*, 390 U.S. 377, 384–85 (1968)). "[D]ue process concerns arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary. Even when the police use such a procedure, . . . suppression of the resulting identification is not the inevitable consequence." *Id.* at 238–39 (citations omitted). "[T]he Due Process Clause requires courts to assess, on a case-by-case basis, whether improper police conduct created a substantial likelihood of misidentification." *Id.* at 239 (internal quotations and citation omitted). "Where the indicators of a witness' ability to make an accurate identification are outweighed by the corrupting effect of law enforcement suggestion, the identification should be suppressed. Otherwise, the evidence (if admissible in all other respects) should be submitted to the jury." *Id.* at 239 (internal quotations and citation omitted).

"[R]eliability is the linchpin in determining the admissibility of identification testimony . . . ." *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). However, "[t]he due process check for reliability, *Brathwaite* made plain, comes into play only after the defendant establishes improper police conduct." *Perry*, 565 U.S. at 241.[1] The due process check does not apply "to suspicion of eyewitness testimony generally, but only to

---

[1] The factors to be considered "include the opportunity of the witness to view the criminal at the time of the crime, the witnesses' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Brathwaite*, 432 U.S. at 114. Evidence as to the reliability of the identification "is for the jury to weigh . . . [and j]uries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable features." *Id.* 116.

- 9 -

improper police arrangement of the circumstances surrounding an identification." *Id.* at 242.

ii.   Analysis

Here, Petitioner argued on direct appeal that the trial court should have suppressed the witnesses' in-court identifications because the identifications were tainted by an unduly suggestive lineup.[2] In affirming Petitioner's conviction, the COA first noted that "[u]nder the Due Process Clause of the Fourteenth Amendment, pretrial identification procedures must be 'conducted in a manner that is fundamentally fair and secures the suspect's right to a fair trial.'" (Doc. 17 Ex. G at 3) (quoting *State v. Lehr*, 201 Ariz. 509, ¶ 46 (2002)). The COA then noted that when a defendant challenges identification evidence, the trial court must hold a pretrial hearing to determine admissibility. If the trial court determines that the identification procedure was not unduly suggestive, then the court need not address whether the identification was reliable. *Id.* at 4.

The COA addressed each of Petitioner's claims as follows: First, as to Petitioner's claim that the detective failed to follow certain guidelines to avoid an unduly suggestive lineup, Petitioner did not object on this ground below and did not argue fundamental error to the COA. The COA also found no fundamental error and found the argument waived. Second, as to the claim that Petitioner was the only one wearing an orange prison shirt, the COA found that Petitioner's argument was not supported by the record because it was not apparent from the photograph that Petitioner was wearing a prison shirt—the shirt appeared coral in color, only the collar and shoulder area were shown, there were no visible markings, another individual in the lineup was wearing a similar red shirt, and each individual's shirt differed in style and color. In addition, both witnesses testified that nothing about the clothing affected their identifications. Thus, the COA concluded that

---

[2] Petitioner specifically argued that: prior to viewing the lineup, the witnesses knew someone had been arrested; Petitioner was the only person wearing prison orange; an unreliable identification from an unfair identification procedure violates due process right to a fair trial; the pretrial identification was unduly suggestive because the detective did not follow the proper procedure; the detective placed Petitioner's photo in the center of the top row; the detective prepared the lineup himself; the detective did not test the lineup on mock witnesses; and the detective did not record the lineup. (Doc. 17 Ex. F).

nothing about Petitioner's shirt singled him out to unfairly focus attention on him. Third, as to the claim that the witnesses were told that police had identified the suspect in custody, the COA noted that this information was provided to the witnesses only after they made their selection from the lineup. Fourth, Petitioner waived his argument that the lineup was unduly suggestive because his photo was placed in the center of the top row by failing to develop the argument or providing any authority to support it. Thus, the COA concluded that the trial court did not abuse its discretion in determining that the lineup was not unduly suggestive, and therefore Petitioner's challenge to the in-court identifications was moot. (Doc. 17 Ex. G at 4–8).

On federal habeas review, Petitioner bears the burden of showing that either the state court's decision was contrary to the Supreme Court's holding in *Perry v. New Hampshire*, that it involved an unreasonable application of *Perry*, or that it was based on an unreasonable determination of the facts. Petitioner has failed to meet that burden here. This Court's review of the record reveals ample evidence to support the COA's determination that, based on the record before it, the trial court did not abuse its discretion in determining that the photographic lineup was not unduly suggestive.

First, as to Petitioner's claim that the lineup was unduly suggestive because prior to making their identifications, the witnesses watched the news and were aware someone had been arrested for theft, the record does not support this argument. Detective Laing testified that he asked both witnesses whether they had seen any news coverage and that both stated they had not, and that he told them to avoid news coverage until after they made their identifications. (Doc. 17 Ex. U at 15–16). He further testified that he did not tell Mary Bussanich about the shooting in Tucson until after she made her identification and that he did not tell either witness that they had chosen the right person. *Id.* at 23–25. He did tell Mary that a person had been arrested in her truck and that he needed to show her a lineup. *Id.* at 36. Melinda Martinez testified that Laing told her there was a suspect in custody and that he had a lineup to show her; Laing asked whether she had seen any media coverage of the incidents in Peoria or Tucson and she had not. *Id.* at 56–57. Mary

Bussanich testified that she did not see anything in the media about Petitioner's crimes before Laing came to her home to show her the lineup. *Id.* at 78. Thus, there is nothing in the record to support Petitioner's claim that the witnesses viewed media coverage of the incidents before making their identifications, and the trial court concluded that the fact that the witnesses may have known someone was in custody was not determinative of reliability.[3] *Id.* at 91.

Second, as to the claim that the lineup was unduly suggestive because Petitioner was the only person in prison orange, Melinda Martinez testified that nothing about the clothing the people in the lineup were wearing influenced her identification, and that Petitioner's eyes are what drew her to his photo—she was focused on his face. *Id.* at 60–61. Melinda further stated that she never knew Petitioner's shirt was state-issued, and to her it looked just like a red shirt another individual in the lineup was wearing. *Id.* at 62. Mary Bussanich similarly testified that it was Petitioner's eyes and facial features that drew her to his photo. *Id.* at 81. The clothing was "not at all" significant to her "because that's not what he was wearing"; she was just looking at the faces. *Id.* Thus, the record does not support Petitioner's argument that the witnesses improperly based their identification on his clothing.

Third, as to the claim that the detective improperly placed Petitioner's photo in the center of the top row because he had been trained that this was the position that drew a witness's attention, the COA applied an express procedural bar and thus the Court is precluded from addressing the merits of this claim on habeas review.

Finally, as to Petitioner's claims that the lineup was unduly suggestive because the detective failed to follow proper procedure by preparing the lineup himself, failing to test the lineup on mock witnesses, and failing to record the lineup identifications, the COA applied an express procedural bar to these claims and the Court is precluded from addressing them here.

---

[3] "A trial court's findings are presumed sound unless the defendant rebuts the 'presumption of correctness by clear and convincing evidence.'" *Dickens v. Ryan*, 740 F.3d 1302, 1315 (9th Cir. 2014) (quoting 28 U.S.C. § 2254(e)(1)).

Accordingly, because Petitioner has failed to show that the COA's decision on this claim was contrary to clearly established law or based on an unreasonable application of that law or an unreasonable determination of the facts, the Court will deny relief on Ground One.

**B. Ground Two**

In Ground Two, Petitioner alleges that his 6th amendment right to present witnesses in his favor as well as his 5th and 14th amendment due process rights were violated when the trial court precluded evidence that an officer at the scene took a cell phone photo of Petitioner that may have been sent to other officers prior to Officer Lankow viewing the lineup and identifying Petitioner as the person who shot at his patrol car. Petitioner notes that his defense at trial was misidentification, and that Lankow initially said the shooter was black (Petitioner is Latino) and that Lankow also saw Petitioner's photo on the news before making his identification.

Respondents contend that while Petitioner has fully exhausted the due process portion of his claim in Ground Two, the 6th amendment portion of the claim is unexhausted and procedurally defaulted. The Court disagrees and finds that Petitioner has fully exhausted his claims in Ground Two.

In his opening brief on direct appeal, Petitioner argued that the trial court erred when it excluded evidence that DPS Officer Jeffrey took a cell phone photo of Petitioner that he may have sent to other DPS officers. Petitioner alleged that this violated his constitutional right to present exculpatory evidence, and specifically his 5th and 14th amendment due process rights to present a defense and cross-examine and impeach witnesses. (Doc. 17 Ex. F at 19, 21). Petitioner did not present this claim specifically as a 6th amendment violation. In order to properly exhaust state remedies before filing a PWHC, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by fairly presenting them to the state's highest court in a procedurally appropriate manner. *Baldwin* 541 U.S. at 29. However, where a claim that is not adequately pled or properly presented is nonetheless adjudicated by the state's highest

court, the claim is exhausted. *See Sandgathe v. Maass*, 314 F.3d 371, 376–77 (9th Cir. 2002) ("In his post-conviction petition, Sandgathe, it is true, did not frame his claim of incompetence to enter a plea . . . in terms of any federal right. . . . But in this case, the post-conviction trial court expressly included federal constitutional claims in its ruling . . . Where a court has in fact ruled on a claim, there is no possibility of 'friction between the state and federal court systems' caused by 'the "unseem[liness]" of a federal district court's overturning a state court conviction without the state court's having had an opportunity to correct the constitutional violation in the first instance.'" (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (alteration in original)). Thus, although Petitioner only specifically argued 5th and 14th amendment violations in his opening brief on direct appeal, the COA's reference to the 6th amendment in discussing Petitioner's claims (as discussed further below) resulted in the proper exhaustion of the entirety of Petitioner's claims in Ground Two. Further, Supreme Court jurisprudence addresses the defendant's right to present evidence in his defense in terms of both the 14th amendment and the 6th amendment.[4]

   i.   Law

   "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (internal quotations and citations omitted). However, "[a] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). "[R]estrictions . . . 'may not be arbitrary or

---

[4] *See Moses v. Payne*, 555 F.3d 742, 757 (9th Cir. 2009) ("The Supreme Court has indicated that a defendant's right to present a defense stems both from the right to due process provided by the Fourteenth Amendment, *see Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L.Ed.2d 297 (1973), and from the right 'to have compulsory process for obtaining witnesses in his favor' provided by the Sixth Amendment, *see Washington v. Texas*, 388 U.S. 14, 23, 87 S. Ct. 1920, 18 L.Ed.2d 1019 (1967) (explaining that the right to compulsory process would be meaningless if the defendant lacked the right to use the witnesses whose presence he compelled).").

disproportionate to the purposes they are designed to serve.'" *Id.* at 330. "[T]rial judges retain wide latitude . . . to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *Holmes v. South Carolina*, 547 U.S. 319, 326, 126 S. Ct. 1727, 1732, 164 L. Ed. 2d 503 (2006) ("While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury."). Finally, "'the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Id.* (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)) (emphasis in original).

ii.    Analysis

In addressing Petitioner's claims regarding the cell phone photo, the COA cited *State v. Oliver*, 158 Ariz. 22 (1988), which in turn relies on United States Supreme Court law, for the proposition that "the Sixth Amendment right to present evidence in one's defense is limited to evidence which is relevant and not unduly prejudicial." (Doc. 17 Ex. G at 8) (quoting *Oliver*, 158 Ariz. at 30). The COA concluded that the trial court did not abuse its discretion in precluding evidence of the cell phone photo because Petitioner's claim that Lebario might have viewed the photo was not supported by the evidence at trial, and Jeffrey testified that while he may have sent the photo to a friend in law enforcement, he did not send it to Lankow or any other DPS officers. Thus, the COA found that "[b]ecause there was no evidence [Lankow] had viewed the photograph, evidence Jeffrey had taken it was not relevant to [Lankow's] identification and would not, as Lebario claims, 'have further reinforced [his] defense that [Lankow's] identification of him was not reliable.'" (Doc. 17 Ex. G at 9) (fourth alteration in

original). The COA further noted that Petitioner had the opportunity to present evidence about his misidentification defense to the jury, including Lankow's initial statement that the suspect was a black male and the fact that Lankow viewed Petitioner's photo on TV prior to making his identification, and that it was up to the jury to assess witness credibility.

Petitioner has not shown that the COA's finding was contrary to clearly established Supreme Court law, or that the court unreasonably applied such law. Nor has Petitioner shown that the COA's decision was based on an unreasonable determination of the facts. Rather, this Court's review of the record confirms that it was not objectively unreasonable for the COA to find that the trial court did not abuse its discretion in precluding evidence of the cell phone photo based on relevancy.

"It is well settled that a state court's evidentiary ruling, even if erroneous, is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process." *Spivey v. Rocha*, 194 F.3d 971, 977–78 (9th Cir. 1999). Here, analogizing to *Crane*,[5] the evidence Petitioner sought to introduce about the cell phone photo was not central to his misidentification defense and thus its exclusion did not render Petitioner's trial fundamentally unfair. Petitioner was able to present other evidence in support of his defense, including the fact that Lankow initially stated that the suspect was black,[6] and that Lankow saw a picture of Petitioner on the news before making his identification.[7] It was up to the jury to evaluate all of the evidence and assess the witnesses' credibility. Further, in discussion with the trial judge, the prosecutor explained that she spoke with Officer Jeffrey and that while he admitted he took a picture

---

[5] In *Crane*, the Supreme Court held that the state court erred in precluding the petitioner from introducing evidence about the circumstances of his confession because "reliable evidence bearing on the credibility of a confession is central to the defendant's claim of innocence." 476 U.S. at 691.

[6] Lankow testified at trial that he initially stated that the driver was a black male. (Doc. 17 Ex. V at 208, 220–21, 243; Ex. W at 260, 264).

[7] Lankow testified that he was watching TV at home and he saw Petitioner's picture on the news, and that he disclosed this to the Marana police department before making his identification at the lineup. (Doc. 17 Ex. V at 240–42; Ex. W at 291).

of Petitioner with his cell phone, he did not send the photo to any other DPS officers. (Doc. 17 Ex. X at 590–91). Jeffrey also stated that he did not even know Lankow at the time because they worked in different districts. *Id.* at 591. Both the prosecution and defense stated they had no knowledge of any officer allegedly showing a picture of Petitioner to Lankow prior to the lineup. *Id.* at 593. Officer Jeffrey also testified that he did take a picture, that he might have shown it to other officers immediately afterwards, and that he may have sent it to another friend in law enforcement. *Id.* at 597–99. Jeffrey was clear that he did not send the photo to Lankow, and that he did not send it to anyone at DPS. *Id.* at 601. This Court's review of the record reveals no evidence suggesting that Lankow somehow viewed the photo taken by Jeffrey prior to making his identification.

In sum, because Petitioner has failed to show that the COA decision on this claim was contrary to clearly established law or based on an unreasonable application of that law, or an unreasonable determination of the facts, the Court will deny relief on Ground Two.

**C. Ground Three**

In Ground Three, Petitioner argues that his 5th and 14th amendment due process rights were violated when the trial court considered Petitioner's use of a weapon as an aggravating factor at sentencing. Petitioner contends that pursuant to *State v. Harvey*, 193 Ariz. 472 (App. 1998) and A.R.S. § 13-701(D)(2), the court may not apply the use of a weapon as an aggravating factor when the use of the weapon is an element of the crime or otherwise used to enhance the sentence.

Respondents contend that Ground Three is unexhausted because Petitioner only raised this claim as a state law sentencing issue to the state courts and did not present the federal constitutional basis for the claim. Respondents further note that Ground Three is not cognizable on federal habeas review because this Court cannot issue a writ based on a perceived error of state law.

In his opening brief on direct appeal, Petitioner made the same state law arguments that he now makes in his habeas petition. *See* Doc. 17 Ex. F at 24–25.

1  Petitioner did not make any specific federal constitutional arguments and cited only state

2  law and state statutes.

3       To properly exhaust a claim, a petitioner must "give the Arizona courts a 'fair

4  opportunity' to act on his federal [] claim before presenting it to the federal courts."

5  *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2004). As this Court has explained:

> Fair presentation requires a petitioner to describe both the operative facts and the federal legal theory to the state courts. *Reese*, 541 U.S. at 28, 124 S. Ct. 1347. It is not enough that all of the facts necessary to support the federal claim were before the state court or that a "somewhat similar" state law claim was raised. *Reese*, 541 U.S. at 28, 124 S. Ct. 1347 (stating that a reference to ineffective assistance of counsel does not alert the court to federal nature of the claim). Rather, the habeas petitioner must cite in state court to the specific constitutional guarantee upon which he bases his claim in federal court. *Tamalini v. Stewart*, 249 F.3d 895, 898 (9th Cir. 2001). Similarly, general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish fair presentation of a federal constitutional claim. *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *amended on other grounds*, 247 F.3d 904 (9th Cir. 2001); *Shumway v. Payne*, 223 F.3d 982, 987 (9th Cir.2000) (insufficient for prisoner to have made "a general appeal to a constitutional guarantee," such as a naked reference to "due process," or to a "constitutional error" or a "fair trial"). Likewise, a mere reference to the "Constitution of the United States" does not preserve a federal claim. *Gray v. Netherland*, 518 U.S. 152, 162–63, 116 S. Ct. 2074, 135 L.Ed.2d 457 (1996). Even if the basis of a federal claim is "self-evident" or if the claim would be decided "on the same considerations" under state or federal law, the petitioner must make the federal nature of the claim "explicit either by citing federal law or the decision of the federal courts...." *Lyons*, 232 F.3d at 668. A state prisoner does not fairly present a claim to the state court if the court must read beyond the pleadings filed in that court to discover the federal claim. *Baldwin*, 541 U.S. at 27, 124 S. Ct. 1347.

23  *Date v. Schriro*, 619 F.Supp.2d 736, 764–65 (D. Ariz. 2008).

24       Claims not previously presented to the state courts on either direct appeal or

25  collateral review are generally barred from federal review because any attempt to return

26  to state court to present them would be futile unless the claims fit into a narrow range of

27  exceptions. *See* Ariz. R. Crim. P. 32.1(d)-(h), 32.2(a) (precluding claims not raised on

28  direct appeal or in prior post-conviction relief petitions), 32.4(a) (time bar), 32.9(c)

(petition for review must be filed within thirty days of trial court's decision). Because these rules have been found to be consistently and regularly followed, and because they are independent of federal law, either their specific application to a claim by an Arizona court, or their operation to preclude a return to state court to exhaust a claim, will procedurally bar subsequent review of the merits of such a claim by a federal habeas court. *Stewart v. Smith*, 536 U.S. 856, 860 (2002); *Ortiz v. Stewart*, 149 F.3d 923, 931–32 (9th Cir. 1998) (Rule 32 is strictly followed); *State v. Mata*, 916 P.2d 1035, 1050–52 (Ariz. 1996) (waiver and preclusion rules strictly applied in post-conviction proceedings).

Arizona Rules of Criminal Procedure regarding timeliness and preclusion prevent Petitioner from now exhausting the federal due process claims in Ground Three in state court. Accordingly, this claim is both technically exhausted and procedurally defaulted and thus not properly before this Court for review. *See Crowell*, 483 F.Supp.2d at 931–33; *Coleman*, 501 U.S. at 732, 735 n. 1; *Garcia*, 2013 WL 4714370 at * 8.

A federal court may not consider the merits of a procedurally defaulted claim unless the petitioner can demonstrate cause for his noncompliance and actual prejudice, or establish that a miscarriage of justice would result from the lack of review. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995). Petitioner has failed to show cause for, or prejudice arising from, his procedural default of the claim, and the Court can glean none from the record before it.[8] *See Martinez*, 132 S. Ct. at 1316; *Murray*, 477 U.S. at 488.

Accordingly, the Court finds that Ground Three is technically exhausted and procedurally defaulted, and that Petitioner has failed to show cause and prejudice for the

---

[8] Petitioner's bare assertion that he has shown cause and prejudice for the procedural default of this claim because "appellate counsel did not properly present Petitioner's federal rights" is unavailing. (Doc. 20 at 1). Even if Petitioner could show cause for the procedural default and the Court construed Ground Three as a substantial claim, Petitioner cannot show prejudice. "[F]ederal habeas corpus relief does not lie for errors of state law," *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990), and "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68, 72 (1991). Here, the Arizona COA noted that the state conceded error on this issue, but found that any error was harmless because the same sentence would have been imposed absent the error pursuant to A.R.S. § 13-701(F), which requires the court to impose an aggravated sentence when it has found only aggravating factors. (Doc. 17 Ex. G at 9–10). Thus, Petitioner cannot show prejudice.

default. The Court further notes that to the extent Petitioner is attacking the application of state sentencing law, his claim is not cognizable in federal habeas. 28 U.S.C. § 2254(a); *Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1999) (a petitioner cannot "transform a state law into a federal one merely by asserting a violation of due process."); *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *see also Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir. 1995) (a conclusory allegation that a federal constitutional right has been violated falls "far short of stating a valid claim of constitutional violation"). Relief on the merits of this claim is therefore precluded.

**D. Ground Four**

In Ground Four, Petitioner argues that his 6th amendment right to effective counsel and his 5th and 14th amendment due process rights were violated when his trial counsel failed to file a motion for a new trial after exculpatory evidence was found after the conclusion of trial. Petitioner states that DNA evidence disclosed on the day of sentencing showed that a shirt found in the truck belonged to another individual, Rafael Reynoso.

Respondents concede that Ground Four is properly exhausted, but contend that Petitioner has failed to show that trial counsel's conduct violated *Strickland* or that the state courts applied *Strickland* in an objectively unreasonable manner. Respondents note that both the trial court and COA found that the DNA evidence did more to bolster the state's case than Petitioner's misidentification defense because although Rafael Reynoso's DNA was found on the shirt, Petitioner's DNA was found on a black beanie in the truck.

i.    Legal Standard

The Supreme Court established a two-part test for evaluating IAC claims in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish that his trial counsel was ineffective under *Strickland*, Petitioner must show: (1) that his trial counsel's performance was deficient; and (2) that trial counsel's deficient performance prejudiced Petitioner's defense. *Ortiz v. Stewart*, 149 F.3d 923, 932 (9th Cir. 1998) (citing

*Strickland*, 466 U.S. at 688, 694).

To establish deficient performance, Petitioner must show that "counsel made errors so serious . . . that counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms." *Strickland*, 466 U.S. at 687–688. The relevant inquiry is not what defense counsel could have done, but rather whether the decisions made by defense counsel were reasonable. *Babbit v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998). In considering this factor, counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 690.

The Ninth Circuit "h[as] explained that '[r]eview of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation.'" *Ortiz*, 149 F.3d at 932 (quoting *Hensley v. Crist*, 67 F.3d 181, 184 (9th Cir. 1995)). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances[.]" *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). Additionally, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Acts or omissions that "might be considered sound trial strategy" do not constitute ineffective assistance. *Id*.

Even where trial counsel's performance is deficient, Petitioner must also establish prejudice in order to prevail on an IAC claim. To establish prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Under the prejudice factor, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. "The likelihood of a different result must

be substantial, not just conceivable." *Richter,* 562 U.S. at 112. Further, because failure to make the required showing of either deficient performance or prejudice defeats the claim, the court need not address both factors where one is lacking. *Strickland,* 466 U.S. at 697–700.

Additionally, under the AEDPA, the federal court's review of the state court's decision on an ineffective assistance of counsel claim is subject to another level of deference. *Bell v. Cone,* 535 U.S. 685, 698–699 (2002). This creates a "doubly deferential" review standard in which a habeas petitioner must show not only that there was a violation of *Strickland,* but also that the state court's resolution of the claim was more than wrong, it was an objectively unreasonable application of *Strickland. See Yarborough,* 540 U.S. at 6; *Bell,* 535 U.S. at 698–99; *Woodford,* 537 U.S. at 25; *Cullen v. Pinholster,* 563 U.S. 170, 171 (2011) (federal habeas court's review of state court's decision on ineffective assistance of counsel claim is "doubly deferential").

ii. Analysis

For purposes of federal habeas review, Petitioner bears the burden of showing that the post-conviction relief court, in ruling that trial counsel was not ineffective, applied *Strickland* in an objectively unreasonable manner. In making this determination, "the question is not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Richter,* 562 U.S. at 105. Here, the state court's finding that Petitioner's claim that his trial counsel was ineffective for failing to file a motion for a new trial was without merit is supported by the record before this Court, and was not an unreasonable application of *Strickland.*[9]

---

[9] "AEDPA directs federal courts to train their attention on the particular reasons why each state court that considered a prisoner's claims denied relief. When more than one state court has adjudicated a claim, the federal court analyzes the last 'reasoned' state court decision." *Curiel v. Miller,* 830 F.3d 864, 869 (9th Cir. 2016) (citing *Barker v. Fleming,* 423 F.3d 1085, 1091 (9th Cir. 2005)). However, where "the last reasoned decision adopted or substantially incorporated the reasoning from a previous decision . . . it [is] reasonable for the reviewing court to look at both decisions to fully ascertain the reasoning of the last decision." *Barker,* 423 F.3d at 1093.

First, in denying Petitioner's Rule 32 petition, the trial court first considered the newly discovered evidence claim and found that Petitioner failed to show that the DNA evidence would have likely or probably altered the verdict. (Doc. 17 Ex. Q at 2). In considering the IAC claim, the court reasoned that:

> [T]he newly discovered DNA evidence significantly strengthened the State's case. Not only did the "doo rag" DNA evidence almost definitively link Defendant to the shooting, it undermined the impeachment value of any shortcomings of Officer Lankow's description of the shooter and produced, in the form of Mr. Reynoso, a witness whose testimony further implicated the Defendant. By any measure, the decision of the Legal Defenders' Office to not file a post-verdict motion on the basis of newly discovered evidence was reasonable.

*Id.* at 3. Thus, the trial court concluded that Petitioner had failed to show deficient performance or prejudice.

Second, in denying relief on Petitioner's petition for review, the Arizona COA agreed with the trial court that the DNA evidence did more to bolster the state's case than to help Petitioner. (Doc. 17 Ex. S at 3). The COA explained that:

> As the court noted, the evidence—consistent with the trial evidence—ties Lebario to the truck. And R.R.'s interview explains the presence of his DNA in the truck and further implicates Lebario. . . . And we do not agree with Lebario that the evidence significantly weakens the first officer's identification. In order to accept that R.R. had been the thief and the one who had shot at the officer, the jury would have had to discount two other witness identifications of Lebario. Even if it did so, it also would have had to accept that Lebario had somehow become the driver of the truck during the brief time between the shooting and the next encounter with law enforcement and that Lebario, despite having not stolen the truck nor recently fired on a law enforcement officer, would nonetheless have fled from police. In sum, we see no reasonable likelihood this evidence would have altered the verdict. . . . Having determined the newly discovered evidence would not have altered the verdict, we have no basis to conclude counsel should have raised this claim in a motion for new trial nor that Lebario could have suffered any prejudice from counsel's failure to do so.

*Id.* at 4. Thus, the COA found no error in the trial court's findings.

When reviewing a claim of IAC, this Court "begin[s] with the premise that under

the circumstances, the challenged action [] might be considered sound trial strategy. . . . [And w]e affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as they did." *Elmore v. Sinclair*, 799 F.3d 1238, 1248–49 (9th Cir. 2015) (internal quotations and citations omitted) (second alteration in original), *cert. denied sub nom.*, *Elmore v. Holbrook*, 137 S. Ct. 3, *reh'g denied*, 137 S. Ct. 583 (2016). "As long as defense counsel uses a sound trial strategy, employing that strategy does not constitute deficient performance." *Elmore*, 799 F.3d at 1250 (internal quotations and citation omitted). Further, "[no decision of the Supreme Court] suggests . . . that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). To require otherwise would "seriously undermine[] the ability of counsel to present the client's case in accord with counsel's professional evaluation." *Id.*

Here, where the DNA evidence implicated both Petitioner and Rafael Reynoso, counsel's decision not to move for a new trial in order to present the evidence could be considered a sound trial strategy. Counsel may have considered that the evidence actually hurt Petitioner's case because his DNA was found on the beanie found inside the truck. It is also possible that counsel considered whether he would be successful in bringing such a motion and determined that he would not. As both the COA and the trial court found, the DNA evidence did not meet the requirements for newly discovered evidence because Petitioner could not show that the evidence would have probably changed the verdict;[10]

---

[10] "A defendant is entitled to relief on a claim of newly discovered evidence if he or she establishes that the evidence was discovered after trial although it existed before trial; that it could not have been discovered and produced at trial through reasonable diligence; that it is neither cumulative nor impeaching; that it is material; and that it probably would have changed the verdict. *State v. Hess*, 231 Ariz. 80, 82 (2012) (internal quotations and citation omitted). "Motions for a new trial based on newly discovered evidence are disfavored and should be granted with great caution." *Id.* at 83 (internal quotations and citation omitted).

In *Hess*, the court agreed with the trial court's conclusion that the DNA evidence was unlikely to affect the verdict where other evidence of the defendant's guilt was strong, including multiple witnesses' identifications of him. *Id.* at 83–84; *see also Bersane v. Ryan*, 2010 WL 1195162, *16 (D. Ariz. Jan. 21, 2010) (trial court properly

thus, counsel was not deficient for failing to bring a motion based on the evidence.

Accordingly, the state court's finding that Petitioner's claim was without merit is supported by the record before this Court, and was not an objectively unreasonable application of *Strickland*. The Court will deny relief on Ground Four.

### E. Ground Five

In Ground Five, Petitioner argues that regardless of the IAC issue, his 5th amendment due process rights were violated because the DNA evidence constitutes newly discovered evidence. Respondents contend that Ground Five is procedurally defaulted because both the trial court and the COA found that Petitioner failed to meet the requirements for newly discovered evidence under Ariz. R. Crim. P. 32.1(e) and applied an express procedural bar to this claim. The Court disagrees with Respondents' argument, but finds that Petitioner failed to properly exhaust this claim as explained below.

Here, Petitioner argued in both his Rule 32 petition and his petition for review to the COA that the DNA evidence constituted newly discovered evidence under Ariz. R. Crim. P. 32.1(e). (Doc. 17 Exs. O and R). However, only in the Rule 32 petition did Petitioner arguably[11] state a federal constitutional basis for this claim, alleging that he was asserting a denial of his 5th amendment due process right to a fair trial, as defined through the provisions of the 6th amendment. (Doc. 17 Ex. O at 8). In his petition for review to the COA, Petitioner only referenced Ariz. R. Crim. P. 32.1(e) in regard to this claim, and thus failed to present the federal basis of his claim to the COA. Thus,

_____

denied motion to vacate judgment based on newly discovered evidence where court determined evidence did not meet criteria for newly discovered evidence and "there was other evidence at trial that impeached the victim as well as corroborated her testimony and the jury weighed all the evidence and found her version of the events more credible."); *Wilson*, 185 F.3d at 992 ("Because the motion almost certainly would have been denied, no prejudice accrued to Wilson from his counsel's failure to make a motion [for a new trial].").

[11] The Ninth Circuit has specifically held that a petitioner's "conclusory, scattershot citation of federal constitutional provisions, divorced from any articulated federal legal theory . . ." fails to satisfy the fair presentment requirement. *Castillo*, 399 F.3d at 1002–03 ("Exhaustion demands more than drive-by citation, detached from any articulation of an underlying federal legal theory.").

- 25 -

Petitioner has failed to properly exhaust his claim in Ground Five because he failed to fairly present a federal legal theory for the claim to the COA. *See Baldwin*, 541 U.S. at 32 ("a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."); *Castillo*, 399 F.3d at 1000 (to exhaust a claim, the petitioner must have presented his federal constitutional issue before the appropriate state court "within the four corners of his appellate briefing."); *Lyons*, 232 F.3d at 670 (the petitioner must have "characterized the claims he raised in state proceedings *specifically* as federal claims."); *Hivala*, 195 F.3d at 1106 ("general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion.").

Arizona Rules of Criminal Procedure regarding timeliness and preclusion prevent Petitioner from now exhausting the claims in Ground Five in state court. Accordingly, these claims are both technically exhausted and procedurally defaulted and thus not properly before this Court for review. *See Crowell*, 483 F.Supp.2d at 931–33; *Coleman*, 501 U.S. at 732, 735 n. 1; *Garcia*, 2013 WL 4714370 at * 8. Petitioner has failed to show cause for, or prejudice arising from, his procedural default of these claims, and the Court can glean none from the record before it. *See Martinez*, 132 S. Ct. at 1316; *Murray*, 477 U.S. at 488. Accordingly, the Court finds that the claims in Ground Five are technically exhausted and procedurally defaulted, and that Petitioner has failed to show cause and prejudice for the default. Habeas relief on the merits of this claim is therefore precluded.

## F. Ground Six

In Ground Six, Petitioner alleges that his 5th and 14th amendment due process rights were violated when the trial court denied an evidentiary hearing during Petitioner's Rule 32 proceedings. Petitioner states that he presented colorable claims for IAC and newly discovered evidence and that to deny a hearing on these claims is a denial of due process of law.

Respondents argue that this claim is not cognizable on federal habeas review because the question of whether Petitioner presented colorable claims in his PCR petition sufficient to entitle him to an evidentiary hearing is a state law issue. For the reasons explained below, the Court finds that this claim is unexhausted and procedurally defaulted, and therefore not properly before this Court for review.

In his Rule 32 petition to the trial court, Petitioner argued that he was entitled to an evidentiary hearing because he had presented colorable claims of IAC and newly discovered evidence. (Doc. 17 Ex. O at 9–10). Petitioner stated that "[t]o deprive the defendant of a hearing would deny him due process of law[,]" *id.* at 10, and cited *United States v. Schaflander*, 743 F.2d 714, 717–18 (9th Cir. 1984). Petitioner did not reference a specific constitutional amendment, nor did he cite any relevant Supreme Court law, and the *Schaflander* case that he did cite discusses the standard applicable to evidentiary hearings in § 2255 cases, not state Rule 32 petitions. Similarly, in his petition for review to the COA, Petitioner cited Arizona state law and rules to argue that the trial court abused its discretion by failing to grant him an evidentiary hearing. (Doc. 17 Ex. R at 11). Petitioner did not reference any due process issues or otherwise argue any federal constitutional issues. Accordingly, the Court finds that Petitioner failed to properly exhaust his claims in Ground Six because he failed to present the federal nature of his claims to the state courts. *See Lyons*, 232 F.3d at 670 ("The petitioner must have "characterized the claims he raised in state proceedings *specifically* as federal claims."); *Hivala*, 195 F.3d at 1106 ("general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion.").

Arizona Rules of Criminal Procedure regarding timeliness and preclusion prevent Petitioner from now exhausting the federal due process claim in Ground Six in state court. Accordingly, this claim is both technically exhausted and procedurally defaulted and thus not properly before this Court for review. *See Crowell*, 483 F.Supp.2d at 931–33; *Coleman*, 501 U.S. at 732, 735 n. 1; *Garcia*, 2013 WL 4714370 at * 8.

A federal court may not consider the merits of a procedurally defaulted claim unless the petitioner can demonstrate cause for his noncompliance and actual prejudice, or establish that a miscarriage of justice would result from the lack of review. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995). Petitioner has failed to show cause for, or prejudice arising from, his procedural default of the claim, and the Court can glean none from the record before it. *See Martinez*, 132 S. Ct. at 1316; *Murray*, 477 U.S. at 488. Accordingly, the Court finds that the claim in Ground Six is technically exhausted and procedurally defaulted, and that Petitioner has failed to show cause and prejudice for the default. Relief on the merits of this claim is therefore precluded.[12]

## IV. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Petitioner's Petition under 28 U.S.C. § 2254 is denied and that this action is dismissed with prejudice. The Clerk shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that no certificate of appealability shall be issued and that Petitioner is not entitled to appeal in forma pauperis because dismissal of the Petition is justified by a plain procedural bar and reasonable jurists would not find the ruling debatable. Further, to the extent Petitioner's claims are rejected on the merits, reasonable jurists would not find the Court's assessment of the constitutional claims to be debatable or wrong.

. . .

---

[12] The Court further notes that Petitioner's argument in Ground Six is premised on the state court's denial of an evidentiary hearing under Ariz. R. Crim. P. 32, and thus concerns a state law issue not cognizable on federal habeas review. Both the trial court and COA found that Petitioner had failed to present a colorable claim for relief under Rule 32 and that a hearing was therefore unnecessary. "[F]ederal habeas corpus relief does not lie for errors of state law," *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990), and "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68, 72 (1991) 28 U.S.C. § 2254(a). Moreover, errors in state PCR proceedings cannot form the basis for habeas relief. "[A] petition alleging errors in the state post conviction review process is not addressable through habeas corpus proceedings." *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989).

Dated this 12th day of December, 2017.

Eric J. Markovich
United States Magistrate Judge